UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS WINSTON, Administrator of the Estate of Tamir Rice, *et al.*, | ) ) ) | Case No.: 1:14 CV 2670 |
| Plaintiffs | ) ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | |
| CITY OF CLEVELAND, *et al.*, | ) ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court in the within case is Defendants Timothy Loehmann ("Loehmann") and Frank Garmback's ("Garmback") (collectively, "Defendants") Joint Motion for Partial Judgment on the Pleadings of the Second Amended Complaint ("Joint Motion") (ECF No. 78). For the following reasons, the court grants in part and denies in part the Joint Motion.

## I. FACTS AND PROCEDURAL HISTORY

On November 22, 2014, Tamir Rice was shot and killed by Loehmann, a police officer for the City of Cleveland ("City"). (First Am. Compl. at ¶¶ 7-8, ECF No. 14; City's Am. Answer at ¶ 8, ECF No. 18.) On December 5, 2014, Plaintiff Elizabeth Goodwin, then administrator of the Estate of Tamir Rice, brought this action against Loehmann, City police officer Garmback, and the City, alleging: excessive force, assault and battery, and wrongful death. (Compl. at 7, ECF No. 1.) Douglas Winston was subsequently appointed as the successor administrator of the Estate of Tamir

Rice ("Estate"). (Tr. at 4:22-25, ECF No. 15.) On January 30, 2015, Douglas Winston as administrator of the Estate ("Winston"), mother Samaria Rice ("Rice"), father Leonard Warner ("Warner"), and sister T.R. through Rice, filed a First Amended Complaint against Loehmann, Garmback, the City, and Does 1-100, alleging twenty-seven counts involving claims of negligence, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, false imprisonment, and violation of 42 U.S.C. § 1983. (First Am. Compl. at 19-70, ECF No. 14.) The City answered (ECF No. 18), and Defendants filed a separate Answer (ECF No. 37).

On July 31, 2015, in response to the First Amended Complaint, Defendants filed a Joint Motion for Partial Judgment on the Pleadings (ECF No. 56), which sought dismissal of claims brought by Rice and Warner, individually and on behalf of the decedent. Subsequently, Winston, Rice, and minor T.R. (collectively, "Plaintiffs") filed a Second Amended Complaint (ECF No. 80), adding defendants and claims for wrongful death and survivorship and removing a number of claims. In response to the Second Amended Complaint, Defendants filed the instant Joint Motion on November 13, 2015, arguing that a number of the claims in the Second Amended Complaint should be dismissed as a matter of law. Winston and Rice filed an Opposition to the Joint Motion (ECF No. 85), and Defendants filed a Reply (ECF No. 89). The court, by separate order, denied the initial Joint Motion for Partial Judgment as moot, except as it relates to Warner's claims.

## II. JUDGMENT ON THE PLEADINGS STANDARD

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed - but early enough not to delay trial[.]" The standard for evaluating a motion for judgment on the pleadings is identical to the standard a court applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Ziegler v. IBP Hog Mkt., Inc.*,

249 F.3d 509, 511-12 (6th Cir. 2001); *Tinney v. Richland Cty.*, No. 1:14 CV 703, 2015 WL 542415, at *3 (N.D. Ohio Feb. 10, 2015) (quoting *Mellentine v. Ameriquest Mortg. Co.*, 515 Fed. App'x 419 (6th Cir. Feb.14, 2013)). The court examines the pleadings of the parties and evaluates the legal sufficiency of the plaintiff's claim. *Id.*; *see also Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993).

The Supreme Court clarified the law in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), regarding what the plaintiff must plead in order to survive a Rule 12(b)(6) motion. When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Additionally, even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true[.]" *Id.*

### III. LAW AND ANALYSIS

#### A. Survivorship

Defendants argue that Rice's survivorship claim should be dismissed for lack of capacity, because the Estate's administrator is the only party with capacity to bring this claim. (Joint Mot. at 2-3, ECF No. 78.) Defendants also maintain that the survivorship claim brought by the Estate's administrator should be dismissed because the claim is "not a distinct cause of action" but a means for the Estate to assert the same claim the decedent would have if he had survived. (*Id.* at 3.) Defendants seem to argue that since the Estate is "separately asserting the claims that the decedent

could have asserted," such as state law claims of assault and battery, the survivorship claim is duplicative of those counts. (*Id.*; Reply at 3, ECF No. 89.) Plaintiffs respond that the survivorship claim is "derivative of the principal claims" in the complaint and not "duplicative." (Opp'n at 5, ECF No. 85.) In other words, as long as the underlying principal claims in the complaint remain, the survivorship claim remains. Plaintiffs seem to concede that Rice lacks capacity to bring a survivorship claim, as they do not argue otherwise. (*Id.*) The court finds that Rice's survivorship claim should be dismissed, but rejects dismissal of the Estate's survivorship claim.

### 1. Capacity

In Ohio, "[a] survivorship claim exists separate and apart from a wrongful death claim." *Wingrove v. Forshey*, 230 F. Supp. 2d 808, 826 (S.D. Ohio 2002) (quoting *Shinaver v. Szymanski*, 471 N.E.2d 477, 482 (Ohio 1984)). Under Ohio's survival statute, R.C. 2305.21, "a victim's right of action for personal injuries survives and passes to her personal representative, and may be instituted for the benefit of the estate[.]" *Id.* In other words, "a personal representative of a decedent's estate stands in the shoes of the decedent to assert claims on behalf of the estate." *Williams v. Barrick*, 10th Dist. Franklin No. 08AP-133, 2008-Ohio-4592, ¶ 10 (quoting *Hosfelt v. Miller*, 7th Dist. Jefferson No. 97-JE-50, 2000 WL 1741909, at *4 (Nov. 22, 2000)) (a parent could not assert the survival claims of his daughter's estate because he did not allege that he was a personal representative of her estate). Here, Plaintiffs do not seem to dispute that Rice lacks capacity to bring the survivorship claim. In fact, Plaintiffs seem to acknowledge that Winston is the personal representative of the Estate, and that Winston as the Estate's administrator is the appropriate party to bring the survivorship claim. Thus, the court dismisses Rice's survivorship claim (Count IV).

While the parties seem to agree that the Estate has capacity to bring the survivorship claim, the parties disagree regarding whether the Estate's survivorship claim is "duplicative" or "derivative" of the other claims in the Complaint, such as the state law claims of assault and battery.

### 2. Derivative Claim

Ohio courts have held that a survivorship claim "is a claim that is derivative of the principal claims in a complaint." *Stratford v. SmithKline Beecham Corp.*, No. 2:07-CV-639, 2008 WL 2491965, at *9 (S.D. Ohio June 17, 2008) (citing *Glassner v. R.J. Reynolds Tobacco Co.*, No. 5:99 CV 0796, 1999 WL 33591006 (N.D. Ohio June 29, 1999)) (holding that the survivorship claim "remains so long as any of the underlying principal claims in the complaint remain," and since the court did not dismiss all of the other claims with prejudice, the survivorship claim was also not dismissed); *Martin v. City of Broadview Heights*, No. 1:08 CV 2165, 2011 WL 3648103, at *14 (N.D. Ohio Aug. 18, 2011) (citation omitted) (stating that since a claim for survivorship is "derivative of Plaintiffs' principal claims, Plaintiffs may maintain this claim so long as any of the underlying principal claims remain"); *see also In re Darvocet*, 756 F.3d 917, 936 (6th Cir. 2014) (stating that since plaintiffs concede that their derivative claim for survivorship "stand[s] or fall[s] with the underlying claims on which [it] rest[s,]" and "the district court correctly dismissed the underlying claims, it did not err in dismissing their derivative claims").

Defendants cite a Southern District of Ohio case from 2002, *Wingrove*, to support its argument that the survivorship claim is "duplicative" of the other claims. 230 F. Supp. 2d at 826. However, *Wingrove* actually supports Plaintiffs' argument, and the findings by other courts, that the survivorship claim is "derivative" and not "duplicative" of the principal claims in the complaint. The district court in *Wingrove* denied the motion to dismiss the survivorship claim asserted by the

representative of the decedent's estate because the claim served as a vehicle to allow the decedent's excessive force claims to survive the decedent's death. *Id.* And in fact, Defendants themselves recognize that the survivorship claim is a "means" to assert other claims. (Joint Mot. at 3, ECF No. 78.) Thus, the case law supports the proposition that the Estate's survivorship claim is "derivative" of the other principal claims, and Defendants have not pointed to any authority concluding otherwise. Since several underlying principal claims remain in the Complaint, the court denies the Joint Motion to dismiss the Estate's survivorship claim (Count IV).

### B. Deliberate Indifference to Medical Needs

Defendants argue that the Estate's 42 U.S.C. § 1983 claim for deliberate indifference to medical needs (Count V) should be dismissed because the claim is not viable. Defendants contend that "the shooting had been reported[,]" and there was no delay in obtaining medical treatment, because a City officer and an FBI agent were on the scene within four minutes and EMS arrived within twelve minutes after the shooting. (Joint Mot. at 5, ECF No. 78.) Defendants also argue that since there is no allegation that Defendants had any medical training to render care to Tamir Rice or that the failure of Defendants to personally perform first aid caused any additional injury, the claim should be dismissed. (Reply at 5, ECF No. 89.) Plaintiffs respond that they have sufficiently stated a claim, arguing that an officer's failure to provide basic first aid to someone with a serious injury does not shield the officer from liability. (Opp'n at 6, ECF No. 85.) The court finds that Plaintiffs have sufficiently stated a plausible claim so as to survive the Joint Motion.

The Fourteenth Amendment governs deliberate indifference to serious medical needs claims of pretrial detainees, and analyzes them "under the same rubric as Eighth Amendment claims brought by prisoners." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (quoting *Villegas v.*

*Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)) (internal quotation marks omitted). The Sixth Circuit applies "a two-prong test with objective and subjective components to assess such claims." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). First, the court determines whether the detainee had a "'sufficiently serious' medical need" under the objective prong. *Id.* (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). A medical need is considered "sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment." *Id.* (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)). Second, the court determines "whether the defendant had a 'sufficiently culpable state of mind' in denying medical care under the subjective prong." *Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). There must be a showing of more than mere negligence, but something less than specific intent to harm or knowledge that harm will result is required. *Id.* (citing *Farmer*, 511 U.S. at 835). The defendants must have "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs." *Id.* (quoting *Blackmore*, 390 F.3d at 896) (internal quotation marks omitted).

Here, Plaintiffs allege that after Tamir Rice was shot, "his intestines were eviscerated and actually coming out of the open wound in his abdomen." (Second Am. Compl. at ¶ 67, ECF No. 80.) Next, Plaintiffs do allege that "an FBI agent who happened to be in the area and who arrived on the scene approximately four minutes after the shooting" first provided medical care to Tamir Rice, and Emergency Medical Services arrived approximately twelve minutes after Tamir Rice was shot. (*Id.* at ¶¶ 59, 67, 75.) However, Plaintiffs also allege that after Loehmann shot Tamir Rice in the stomach, he collapsed to the ground, and for the next minute and a half while he lay on the

ground, Defendants "stood around" and did not provide any medical care or assistance to him then or at any other time. (*Id.* at ¶¶ 43-49, 66.) Given the description of the severity of Tamir Rice's injuries as alleged in the Second Amended Complaint, Plaintiffs have adequately plead that Tamir Rice had a "sufficiently serious medical need," thus satisfying the objective component. Plaintiffs have also alleged facts that, if true and viewed in the light most favorable to Plaintiffs, are sufficient to state a plausible claim for relief against Defendants for failing to provide any medical care or assistance. The Joint Motion is denied as to this claim (Count V).

### C. Intentional Infliction of Emotional Distress Claim

Defendants contend that the intentional infliction of emotional distress claim filed by Rice (Count XIII) should be dismissed because the alleged conduct was not directed toward Rice personally but to her children. (Joint Mot. at 6, ECF No. 78.) Plaintiffs respond that "the Second Amended Complaint pleads outrageous conduct that was directed toward Ms. Rice herself," including that Defendants forced her to choose between staying with her daughter T.R., who was still handcuffed in the police car, and going in the ambulance with her wounded son, Tamir Rice. (Opp'n at 8, ECF No. 85.) The court agrees that, based on the allegations in the Second Amended Complaint, Plaintiffs have sufficiently stated a plausible claim for relief.

In Ohio, to prevail on a claim for intentional infliction of emotional distress, a plaintiff must establish the following four elements:

> 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff;
>
> 2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;
>
> 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and

-8-

> 4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable [person] could be expected to endure it.

*Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 618-19 (6th Cir. 2014) (quoting *Pyle v. Pyle*, 11463 N.E.2d 98, 103 (Ohio Ct. App. 1983)) (internal citations and quotation marks omitted) (in addition to their federal civil rights claim, plaintiffs pleaded sufficient facts to make a plausible intentional infliction of emotional distress claim, when officers entered the house without a warrant and effected an alarming and unnecessary show of force).

Here, Plaintiffs alleged the following: Tamir Rice was playing by himself with a plastic toy gun in the park beside Cudell Recreation Center when Loehmann shot him, and he collapsed to the ground. (Second Am. Compl. at ¶¶ 26-27, ECF No. 80.) Less than a minute later, T.R. ran towards her brother, screaming and crying out "my baby brother, they killed my baby brother," and then she was tackled by Garmback, dragged by Loehmann to the ground, placed face down, handcuffed and "forced into the backseat of the police car." (*Id.* at ¶¶ 53-61.) When Rice learned that her son Tamir Rice had been shot, she rushed to the scene, where she found him wounded on the ground and her daughter T.R. handcuffed in Defendants' police car. (*Id.* at ¶¶ 77-79.) Rice begged Defendants to release T.R., and Defendants refused, forcing Rice to choose between staying with her minor daughter T.R. and going in the ambulance with her wounded son Tamir Rice. (*Id.* at ¶¶ 10, 20, 82.) Next, "[f]orced to make a choice no mother should ever have to make, Ms. Rice chose to go in the ambulance with Tamir[,]" and T.R. was left alone still handcuffed in the police car, where half an hour later, she was questioned by City officers without an adult present. (*Id.* at ¶¶ 83-86.) Rice experienced severe emotional distress as a result of Defendants' actions. (*Id.* at ¶ 87.)

Viewing these allegations as true and in the light most favorable to Plaintiffs, Plaintiffs have

sufficiently stated a plausible claim for relief.  While not all of the facts pled and cited above are pertinent to the court's analysis of this claim, the gravamen of Plaintiffs' intentional infliction of emotional distress claim is that, although Defendants clearly did not have a basis for holding T.R. in custody, they refused to release her to her mother, and they intentionally or knowingly forced Rice to choose between staying with T.R. or accompanying her dying son to the hospital.  Plaintiffs allege that Defendants knew or should have known that their conduct would result in Rice's serious emotional distress, their conduct was extreme and outrageous, and their actions were the proximate cause of Rice's actual and severe emotional anguish.  These allegations make out a plausible claim.  Moreover, Defendants citation to *Hartwig v. Nat'l Broad. Co.*, 863 F. Supp. 558, 562 (N.D. Ohio 1994) is inapposite.

In *Hartwig*, the plaintiffs claimed intentional infliction of emotional distress for a statement made by an NBC correspondent in news coverage of the death of one of their family members in an explosion on the U.S.S. Iowa.  Judge Wells concluded that summary judgment should be granted for defendant NBC because plaintiffs failed to provide evidence of plaintiffs' serious emotional distress, and there was an unrefuted affidavit by the correspondent stating that he was merely doing his job and his reporting was not directed against the plaintiffs.  Unlike *Hartwig*, the instant case is not at the summary judgment stage.  Furthermore, the plaintiffs in *Hartwig* were much farther removed from the fatal explosion, whereas Rice alleges that she was at the scene of the shooting, where she experienced severe emotional distress because Defendants intentionally and knowingly forced her to choose between staying with her daughter, who was placed in custody without justification, and accompanying her dying son.  At this stage, these allegations are sufficient to survive the Joint Motion.  Defendants' citation to *Hartwig* does not persuade the court to reach a

-10-

different conclusion. However, it goes without saying that the court's opinion should not be viewed as opining on whether such a claim would survive summary judgment or whether Plaintiffs would be successful at trial.

Accordingly, the court denies the Joint Motion as to Rice's intentional infliction of emotional distress claim.

### D. Rice's 42 U.S.C. § 1983 Claim

In the Second Amended Complaint, Rice filed a 42 U.S.C. § 1983 claim under the Fourteenth Amendment Due Process Clause against Defendants (Count XV), alleging that Defendants intentionally deprived Rice of her liberty interest in Tamir Rice's familial companionship and society, entitling her to damages. (Second Am. Compl. at ¶¶ 235-238, ECF No. 80.) Defendants seek dismissal of this count, arguing that such a claim is not recognized by the Sixth Circuit. Plaintiffs argue that there is a circuit split on the issue of whether a parent can bring a section 1983 claim, contending that their own constitutionally-protected liberty interest in familial association is violated based on the actions of state actors. However, Plaintiffs concede that the Sixth Circuit declined to recognize this right. *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (citing *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984)) ("[A] section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort."); *Foos v. City of Delaware*, 492 Fed. Appx. 582, 592 (6th Cir. 2012) (citation omitted) (same); *Craft v. Ohio Dep't of Rehab.*, No. 1:14 CV 1682, 2015 WL 2250667, at *2 (N.D. Ohio May 13, 2015) (same). The parties agree that the Sixth Circuit has declined to allow this type of section 1983 claim by family members at this time, and the court is bound by this precedent. Thus, the court grants the Joint Motion on this claim.

### III. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Defendants Timothy Loehmann and Frank Garmback's Joint Motion for Partial Judgment on the Pleadings of the Second Amended Complaint (ECF No. 78).

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

February 2, 2016